**Michael A. GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00966–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 27, 1996.

Patrick Barry Montgomery, San Antonio, for Appellant.

Robert Boyd Padgett, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before CHAPA, C.J., and LOPEZ and HARDBERGER, JJ.

## OPINION

CHAPA, Chief Justice.

### Nature of the Case

This is an appeal from a conviction of aggravated robbery. In one point of error, appellant contends that the evidence is insufficient to support his conviction. We affirm the judgment of the trial court.

### Factual and Procedural Background

Frank Lujan is an independent jeweler who has operated a booth at a flea market for the past ten years. On the morning of September 7, 1991, Lujan arrived at the flea market. He had thirty to forty thousand dollars worth of inventory in his van. As he was unloading jewelry cases from his van, someone put a gun to his back and said, "Get in the van, or I will kill you." Lujan turned and saw three men. He began to struggle with the man who had the gun to his back. This man was later identified as appellant.

During the struggle, Lujan was shot four times. After Lujan was shot, the three assailants drove away in a pick-up truck. No property was taken from Lujan.

Shortly after the shooting, four young men arrived unexpectedly at the home of Jesse Herrera. Herrera's home is only a short distance from the flea market. One of the visitors was appellant. Herrera heard appellant say, "I shot that guy." Herrera also saw a gun in appellant's waistband and noticed that appellant had on a stained black t-shirt. When appellant left Herrera's house, he was not wearing the same t-shirt. An investigation of Herrera's bedroom revealed two guns and a blood-stained, black t-shirt that had not been there before the visit. Appellant was arrested after both Lujan and Herrera identified him from a photographic lineup.

Appellant was indicted for aggravated robbery. Following his plea of not guilty, the case was tried to a jury. The defense offered no evidence. The jury returned a verdict of guilty, and the court sentenced him to sixty years confinement. Appellant's motion for new trial was denied.

### Argument on Appeal

In his sole point of error, appellant complains that the evidence is insufficient to support his conviction because the State failed to prove that the injury to the complainant was caused in the course of committing theft.

In reviewing the legal sufficiency of the evidence, we must view all the evidence in the light most favorable to the verdict and determine whether a rational trier of facts could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). In doing so, we are reminded that the jury is the sole trier of fact and may judge the credibility of the witnesses, reconcile conflicts in the testimony, and accept or reject any or all of the evidence presented by either side. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim.App.1991).

In reviewing factual sufficiency, we must view all the evidence without regard to whether the evidence is favorable to the State or to the appellant. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996). Following such a review, we will reverse only if the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* These standards apply to both direct and circumstantial evidence. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

■ In order to obtain a conviction for aggravated robbery, the State must show that a person, in the course of committing theft and with intent to obtain or maintain control of property, intentionally or knowingly causes bodily injury to another or threatens or places another in fear of imminent bodily injury or death, and uses a deadly weapon. *Bilbrey v. State*, 594 S.W.2d 754, 759 (Tex.Crim.App.1980); Tex. Penal Code Ann. § 29.02 (Vernon 1994); Tex. Penal Code Ann. § 29.03 (Vernon 1994). Appellant contends that there is no evidence that Lujan's money, jewelry, or van was stolen. Appellant also argues that there is no evidence that he demanded or otherwise attempted to exercise control over any of Lujan's property. As such, appellant contends that the element "in the course of committing theft" was not satisfied.

■ Conduct occurring "in the course of committing theft" is broadly defined as conduct that occurs in an attempt to commit theft, during the commission of theft, or in immediate flight following the attempt or commission of theft. *Thomas v. State*, 807 S.W.2d 803, 806 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); Tex. Penal Code Ann. § 29.01 (Vernon 1994). As such, the actual commission of theft is not a prerequisite of the offense of robbery. *Autry v. State*, 626 S.W.2d 758, 762 (Tex.Crim.App. 1982), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Further, a verbal demand is not talisman of an intent to steal. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex.Crim.App.1976). The attempt or commission of theft may be inferred from circumstances, actions, and conduct. *Id.; see*

*Banks v. State,* 471 S.W.2d 811, 812 (Tex. Crim.App.1971).

Several courts have addressed circumstances similar to the one before us. For example, in *Johnson v. State,* 541 S.W.2d 185 (Tex.Crim.App.1976), the appellant entered a grocery store and pointed a shotgun at the manager's booth. Officers in the grocery store chased and apprehended the appellant. There was no evidence of a demand, taking, or attempted taking of property. However, the court held that the evidence of the appellant's actions was sufficient to allow a jury to find that he was acting with intent to obtain control of the store's property. *Id.* at 187.

In *Purser v. State,* 902 S.W.2d 641 (Tex. App.—El Paso 1995, no pet.), the appellant, in order to show insufficient evidence, focused on the fact that the pastor of a church could not state for certain whether any property had been taken from the church following the murder of the church secretary. However, the court held that attempted theft could be inferred because desk drawers were opened, the content of the drawers had been disturbed, and a bloody footprint was found beside the desk. *Id.* at 647.

In *Barnes v. State,* 845 S.W.2d 364 (Tex. App.—Houston [1st Dist.] 1992, no pet.), the complainant counted out money in front of the appellant after the completion of a drug deal. After the complainant put the money in his pocket, the appellant reached for a gun. The complainant began to run and appellant shot him. Even though no demand for money had been made, the court found that the evidence was sufficient for a jury to find that the appellant intended to steal the money from the complainant. *Id.* at 367.

Finally, in *Chastain v. State,* 667 S.W.2d 791 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd), the appellant shot a gas station attendant after a witness heard the attendant saying, "I don't have the key." The attendant then ran from his booth saying, "He shot me, but he didn't rob me." The court held that in spite of the fact that no money was taken and no one heard a demand for money being made, there was sufficient evidence to allow a jury to find that the appellant acted with the intent to obtain control of the gas station's property. *Id.* at 795.

A different result was reached in *Thomas v. State,* 807 S.W.2d 803 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd), where the victim was found dead on her kitchen floor. Her body was fully clothed and she was wearing a substantial amount of jewelry. Her purse was lying nearby, upside down but with the contents fully intact. The court held that the elements of robbery had not been proven as the evidence was just as consistent with a struggle as it was with theft or attempted theft. *Id.* at 807.

The present case is factually distinguishable from *Thomas* and more closely akin to *Johnson.* In *Thomas,* the crime occurred in the complainant's home, where motives other than theft are more probable than in a similar situation occurring in a retail store or place of business, where money and goods are certain to be available. Here, appellant was approached and held at gun point as he was preparing to unload thirty to forty thousand dollars worth of jewelry from his van. Such a situation is analogous to a grocery store employee being held at gun point as was the case in *Johnson.* In *Johnson,* no demand for money was made and nothing was actually taken. Yet, the court of criminal appeals held that the intent to commit theft could be inferred from the circumstances. *See Johnson,* 541 S.W.2d at 187.

In the present case, there was testimony that it was unusual for anyone to be at the flea market that early in the morning unless they were unloading merchandise. There was also testimony that Lujan had operated his booth for ten years. As such, anyone watching Lujan would know that he carried with him large amounts of jewelry and that he unloaded it early in the morning. Also, the assailants were apprehended at an apartment complex less than a mile from the flea market.

Because it is reasonable to conclude that the assailants were familiar with the area and knew that large amounts of inventory were being unloaded at a time when the flea market was relatively deserted, it is also reasonable to infer that the assailants intended to rob Lujan. This inference is strengthened by the fact that Lujan was not ap-

proached by his assailants until he had opened the door of his van and began to unload his merchandise. Appellant testified that the words and actions of the three men indicated that they were there to rob him.

As in the cases discussed above, while no one heard appellant or his accomplices demand Lujan's jewelry, money, or van, the circumstances are such that a reasonable jury could find that they were acting with intent to obtain control of the property in Lujan's possession. *See Johnson,* 541 S.W.2d at 185; *Chastain,* 667 S.W.2d at 795. As such, the evidence is sufficient to support the jury's implied finding that appellant committed the assault on Lujan during the commission of theft. Appellant's point of error is overruled and the judgment of the trial court is affirmed.